UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VERNITA GRAY AND PATRICIA EWERT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | No. 13 C 8449 |
| | ) | |
| PEOPLE OF THE STATE OF ILLINOIS | ) | Judge Thomas M. Durkin |
| *EX REL*. LISA MADIGAN, ATTORNEY GENERAL | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| Intervenor, | ) | |
| v. | ) | |
| | ) | |
| DAVID ORR, IN HIS OFFICIAL CAPACITY AS | ) | |
| COOK COUNTY CLERK, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Under current Illinois law, same-sex partners cannot be married. That will change on June 1, 2014. On that date, Illinois will recognize marriages between same-sex partners. Between now and then, however, same-sex couples must wait to marry in Illinois and also wait to have their lawful marriages in other states recognized in Illinois. Due to extraordinary and compelling circumstances, Plaintiffs Vernita Gray and Patricia Ewert asked this Court to order Defendant Cook County Clerk David Orr to issue them a marriage license and allow them to marry in Illinois before June 1, 2014.

The issue presented here is a narrow one: whether the State of Illinois has any remaining governmental interest in a law prohibiting same-sex marriage when

it has effectively disavowed any prior justification for that law by enacting a new law that will allow same-sex couples to marry. Underlying that narrow issue is the even narrower issue of when balancing the equities in this case, have Plaintiffs demonstrated a sufficient likelihood of success on the merits of their as-applied equal protection challenge to the current Illinois law prohibiting same-sex marriage such that temporary injunctive relief should be granted.

On November 25, 2013, the Court held a hearing on Plaintiffs' motion for a temporary restraining order ("TRO"). Following lengthy argument from, and discussion with, the parties, this Court granted the TRO that day, finding that the balancing of equities and hardships weighed strongly in Plaintiffs' favor. R. 21. This Order memorializes the oral findings the Court made at the hearing on Plaintiffs' motion.[1]

## Factual Background

For purposes of evaluating Plaintiffs' request for a TRO, the following facts are taken as true. *See Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. North Am., LLC*, No. 03 C 760, 2006 WL 2808158, at *8 (N.D. Ill. Sept. 6, 2006); *see also* Fed. R. Civ. P. 65(b)(1)(A). The facts of this case are compelling. Plaintiffs Vernita Gray and Patricia Ewert are Chicago residents who have been in a committed relationship for more than five years. When the Illinois General Assembly authorized civil unions for gay and lesbian couples in 2011, Gray and Ewert

---

[1] Following the entry of the TRO, Plaintiffs married in Cook County on November 27, 2013.

expressed their commitment to each other by joining in such a union, taking part in both civil and religious ceremonies. Gray is now terminally ill with cancer and does not have long to live. Sadly, Gray may only have weeks to live. She and Ewert wish to marry before Gray passes away. A marriage recognized under Illinois law would allow Gray and Ewert to enjoy the same personal, emotional benefits and satisfactions that accrue to couples whose marriages are recognized by society and the State. A marriage recognized under Illinois law would also entitle Ewert to make health decisions on Gray's behalf and receive survivor benefits, including social security and estate tax benefits.

As it stands, current Illinois law prohibits marriages between two individuals of the same sex. 750 ILCS 5/212(a)(5). On November 5, 2013, the General Assembly passed Public Act 98-597 (Senate Bill 10), which amended the Illinois Marriage and Dissolution of Marriage Act to permit same-sex couples to legally marry in Illinois. The Governor of Illinois signed this bill into law on November 20, 2013. This amendment did not become effective immediately, however. Instead, the amendment becomes effective on June 1, 2014. *See* Ill. Const. art. IV, § 10. Gray's illness will almost certainly prevent her from living until that date. Given the seriousness of Gray's medical condition, Ewert called the Office of the Cook County Clerk, inquiring about whether the Clerk would issue a marriage license to a same-sex couple before June 1, 2014. An employee informed Ewert that the Clerk could not issue that license before that date.

Soon thereafter, Plaintiffs filed a two-count complaint against Defendant Clerk Orr, raising both a facial and as-applied constitutional challenge to the current Illinois law. They allege that the law violates both the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs also requested that the Court issue a TRO and a preliminary injunction prohibiting Clerk Orr from enforcing the Illinois statutes excluding lesbian and gay couples from marrying in Illinois as applied to them, ordering Clerk Orr to issue a marriage license to Plaintiffs, and requiring Clerk Orr to register their solemnized marriage in the same manner as all other marriages in Illinois are registered. The Illinois Attorney General moved to intervene in the litigation, but not to defend the constitutionality of the Illinois law. Rather, the Illinois Attorney General joined in Plaintiffs' claim that the current Illinois law prohibiting same-sex marriage discriminates against individuals who wish to marry based on their sexual orientation and that such discrimination violates the Equal Protection Clause as applied to Plaintiffs.

On November 25, 2013, the Court held a hearing on Plaintiffs' motion. At the hearing, Plaintiffs stressed the urgency of Gray's medical condition. The Illinois Attorney General reiterated that the State did not object to the injunctive relief Plaintiffs sought; nor would such relief, the State represented, disserve the public interest. Clerk Orr, through his counsel the Cook County State's Attorney, indicated his desire to immediately issue a marriage license to Plaintiffs but his

unwillingness to do so absent a court order given the constraints imposed by the current law.

## Legal Standard

In determining whether to grant preliminary injunctive relief, this Court must, as a threshold matter, determine whether the moving party has demonstrated: (1) some likelihood of success on the merits of the underlying claim; (2) the absence of an adequate remedy at law; and (3) the suffering of irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

If the moving party clears these thresholds, the Court then balances the harm to the non-moving party if preliminary relief is granted against the harm to the moving party if relief is denied, and further considers the consequences to the public interest of granting or denying relief.[2] *Id.* at 11-12. This equitable balancing process employed by the Seventh Circuit involves a "sliding scale" analysis, "weighting harm to a party by the merit of [her] case," *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007), with the aim "to minimize the costs of a wrong decision," *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "The strength of the moving party's likelihood of success on the merits affects the balance of harms." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012); *see also Abbott*, 971 F.2d at 12 ("[T]he more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms

---

[2] The standards for issuing a TRO are identical to those for a preliminary injunction. *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001).

need weigh towards its side; the less likely it is the plaintiff will succeed, the more

the balance need weigh towards its side."). In other words:

> Irreparable injury is not enough to support equitable relief. There also
> must be a plausible claim on the merits, and the injunction must do
> more good than harm (which is to say that the "balance of equities"
> favors the plaintiff). How strong a claim on the merits is enough
> depends on the balance of harm: the more net harm an injunction can
> prevent, the weaker the plaintiff's claim on the merits can be while
> still supporting some preliminary relief.

*Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721,

725 (7th Cir. 2009) (internal citations omitted).

## Analysis

At the outset, the Court briefly addresses the question of whether Plaintiffs

have standing to pursue this litigation. Constitutional standing is a jurisdictional

inquiry; indeed it is "an essential component of Article III's case-or-controversy

requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir.

2009); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III

standing requires a: (1) concrete injury-in-fact; (2) causal connection between the

injury and the conduct complained of; and (3) likelihood that the injury will be

redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *see also United States

v. Windsor*, — U.S. —, 133 S. Ct. 2675, 2685-86 (2013). There are also prudential

limitations to a federal court's exercise of jurisdiction, but these rules "are more

judicially self-imposed limits on the exercise of federal jurisdiction." *Windsor*, 133 S.

Ct. at 2685 (internal quotation marks omitted). As the parties invoking federal

jurisdiction, Plaintiffs bear the burden of establishing that they have standing. *Lujan*, 504 U.S. at 561.

Plaintiffs here have suffered a concrete redressable injury. Clerk Orr has represented to the Court that given the current state of Illinois law, which neither allows nor recognizes same-sex marriages, he cannot issue Plaintiffs a marriage license absent a court order. Clerk Orr maintains this position despite the Illinois Attorney General's representation that the State is not defending the constitutionality of the current Illinois law as applied to these two plaintiffs. Accordingly, because Plaintiffs have suffered a "concrete, persisting, and unredressed" injury, Article III standing exists. *See Windsor*, 133 S. Ct. at 2685.

The Illinois Attorney General's decision not to defend the constitutionality of the Illinois law in court while County Clerk Orr continues to deny a marriage license to Plaintiffs presents a prudential limitation on the exercise of jurisdiction. But such a prudential limitation does not deprive the Court from exercising Article III jurisdiction. Indeed, the procedural posture here is similar to the posture of the parties in *Windsor*. And there, the Supreme Court concluded that Article III standing existed in the district court despite the Government's position to agree with Windsor's legal claim and yet refuse to give it legal effect. *Id.* at 2684-85, 2686-87 (relying on reasoning of *INS v. Chadha*, 462 U.S. 919 (1983)). Accordingly, a justiciable controversy under Article III exists.

Both the Illinois Attorney General and Clerk Orr have represented that they agree with Plaintiffs' as-applied equal protection challenge to the current Illinois

law prohibiting marriages between same-sex partners. They submit that the current Illinois law discriminates against individuals who wish to marry based on their sexual orientation, and that the law, which classifies on the basis of sexual orientation, should be subjected to heightened equal protection scrutiny. Alternatively, they contend that the discrimination underpinning the current Illinois law cannot, as applied to Plaintiffs, withstand a rational basis review. Because Plaintiffs' equal protection claim is the claim on which the parties focus, that is where the Court will direct its attention.

In 1977, Illinois passed the Illinois Marriage and Dissolution of Marriage Act. *See* Public Act 80-293; Ill. Rev. Stat. 1977, ch. 40, § 101, *et seq.* Although the Act did not explicitly prohibit same-sex couples from being married, Ill. Rev. Stat. 1977, ch. 40, § 212, that was the understanding when the legislation was passed, *see* 80th Ill. Gen. Assem., Senate, Transcript of May 19, 1977, at 286-87. Nearly twenty years later, Illinois amended its Marriage Act to explicitly prohibit same-sex marriages, 750 ILCS 5/212(a)(5) (2006), and to declare same-sex marriages to be contrary to Illinois public policy, *see* Public Act 89-459; 750 ILCS 5/213.1 (2006).

In 2011, the Illinois General Assembly authorized "civil unions" for gay and lesbian partners, granting those couples the same rights and privileges under Illinois law afforded to opposite-sex married couples except the right to marital status and the federal rights that accompany that status. *See* Public Act 96-1513; 750 ILCS 75/10. Recently, the General Assembly passed, and Governor Quinn signed into law, Senate Bill 10, which permits same-sex marriages. Because Senate

Bill 10 was passed after May 31, 2013—it was passed by both General Assembly bodies on November 5, 2013—it could not become effective prior to June 1 of the next calendar year (*i.e.* 2014) absent a three-fifths vote from the members of each house of the General Assembly providing for an earlier effective date. *See* Ill. Const. art. IV, § 10.[3] The General Assembly did not provide for an earlier effective date in Senate Bill 10, and the bill thus becomes effective on June 1, 2014.

Against this backdrop, Plaintiffs seek preliminary injunctive relief, arguing that if forced to wait to marry until June 1, 2014, they will suffer real, immediate, and irreparable harm for which there will be no adequate remedy at law. Given Gray's medical condition and imminent death, Gray and Ewert may not be able to wait to marry until June 1, 2014 or until final resolution of their claims on the merits. Should Gray pass away before either of these two events, Gray and Ewert will never be able to obtain the relief they seek here. Accordingly, Plaintiffs have cleared the initial threshold of demonstrating entitlement to temporary injunctive relief by showing the absence of an adequate of remedy at law should temporary relief be denied.

Plaintiffs have further demonstrated that absent temporary injunctive relief, irreparable injury would result. Concomitant with official marriage status conferred

---

[3]    Section 10 of Article IV of the Illinois Constitution provides: "The General Assembly shall provide by law for a uniform effective date for laws passed prior to June 1 of a calendar year. The General Assembly may provide for a different effective date in any law passed prior to June 1. A bill passed after May 31 shall not become effective prior to June 1 of the next calendar year unless the General Assembly by the vote of three-fifths of the members elected to each house provides for an earlier effective date."

under Illinois law are important federal rights and benefits, including for example, the right to take leave under the Family and Medical Leave Act, 29 U.S.C. § 2614(c)(1); the right to file a joint income tax return; spousal tax benefits such as exemption from certain estate tax obligations; and eligibility for Ewert for social security benefits as a surviving spouse. *See Windsor*, 133 S. Ct. at 2692-96 (holding that federal laws based on marriage status must apply to same-sex marriages recognized under state law). Marriage will thus confer concrete financial benefits to Plaintiffs, and denying Gray and Ewert the opportunity to marry before Gray passes away will cause irreparable harm by preventing them from realizing those benefits. Equally, if not more, compelling is Plaintiffs' argument that without temporary relief, they will also be deprived of enjoying the less tangible but nonetheless significant personal and emotional benefits that the dignity of official marriage status confers. *See id.* at 2692 (stating that a state's recognition of same-sex marriage "is more than a routine classification for purposes of certain statutory benefits" but is a status that is a "far-reaching legal acknowledgement of the intimate relationship between two people, a relationship deemed by the State worthy of dignity in the community equal with all other marriages"). Ultimately, by passing Senate Bill 10, the General Assembly has officially recognized the value of all the benefits that official marriage status imparts and determined that these are benefits same-sex couples are entitled to enjoy.

Plaintiffs claim that they are likely to succeed on the merits of their equal protection claim as applied to them. *Windsor* certainly informs the analysis of the

merits. In *Windsor*, the Supreme Court invalidated section 3 of the Federal Defense

of Marriage Act ("DOMA"), and in doing so, gave married same-sex couples the

same rights under federal law as those now enjoyed by opposite-sex couples. 133 S.

Ct. at 2695-96. In reaching this conclusion, the Court denounced section 3 of DOMA,

which was based on legislative "animus" toward gays and lesbians, as having "no

legitimate purpose":

> DOMA seeks to injure the very class [of married gay couples that] New
> York seeks to protect. By doing so it violates basic due process and
> equal protection principles applicable to the Federal Government. The
> Constitution's guarantee of equality must at the very least mean that a
> bare congressional desire to harm a politically unpopular group cannot
> justify disparate treatment of that group.

*Id.* at 2693 (internal quotation marks and citations omitted), 2696; *see also id.* at

2694 (stating that "DOMA's principal effect is to identify a subset of state-

sanctioned marriages and make them unequal" and noting that DOMA "tells [same-

sex] couples, and all the world, that their otherwise valid marriages are unworthy of

federal recognition"). An examination of the Illinois Marriage Act's history and the

1996 amendment declaring same-sex marriages to be against Illinois public policy

reveals a similar animus towards same-sex couples. *See* 80th Ill. Gen. Assem.,

Senate, Transcript of May 19, 1977, at 286-87; Public Act 89-459, 89th Ill. Gen.

Assem., Senate, Transcript of Mar. 28, 1996, at 97, 100-101.

Further informing the analysis is the fact that on November 5, 2013, the

Illinois General Assembly recognized marriage (and the rights and privileges that

come with it) as a fundamental right to which same-sex couples are entitled.

Despite this recognition, however, same-sex couples must still wait until June 1,

2014 to enjoy that right. Any policy justification for the current Illinois law has been undercut and since rejected by the Illinois General Assembly with its passage of Senate Bill 10, which now seeks to protect same-sex couples. *See* new.livestream.com/blueroomstream/events/2448173 (98th Ill. Gen. Assem., House, Livestream Debate of Nov. 5, 2013). There is no legislative history that the parties have pointed to, or that the Court could find, that provides either a legitimate governmental justification or a rational basis for the General Assembly's decision to delay the effective date of Senate Bill 10. Nowhere is there any mention or suggestion that a delay in the effective date is necessary to, for example, change forms in county clerks' offices to allow for an orderly transition to the new law. Indeed, the only reason the parties have cited for the delay is the functioning of the state's logistical process of passing a law.

Ultimately, the General Assembly's recent enactment of the new law permitting same-sex marriages and the attendant policy goal of that new law undermines any reason for applying the justification underlying the current law to these plaintiffs in these compelling circumstances. In any event, at least at this stage, Plaintiffs have demonstrated the requisite "some likelihood of success" on the merits of their as-applied equal protection claim, a conclusion that supports granting preliminary relief.

Both the balance of harms and the public interest as determined by the people of the State of Illinois—the two other components of the preliminary injunctive relief calculus—weigh heavily in favor of granting temporary injunctive

12

relief. Should a final determination of Plaintiffs' equal protection claim reveal that it has no merit, the harm to Clerk Orr and the State of Illinois by permitting Gray and Ewert to marry would be relatively minor. Given the Illinois General Assembly's enactment of Senate Bill 10, any harm by an erroneous decision only results in moving up the date for them to marry by a relatively short period of time. Far weightier is the harm that will be done to Plaintiffs should the injunction not issue and Plaintiffs are forced to wait until the end of the suit for relief, relief which could be moot as to Plaintiffs should Gray pass beforehand.

For similar reasons, the public interest is not disserved by granting temporary injunctive relief given these compelling circumstances. Indeed, the Illinois Attorney General, the State's chief law enforcement officer charged with defending the State's interests, has disavowed any interest the State has in defending the constitutionality of the current Illinois law as applied to these Plaintiffs and has instead argued that the public interest is advanced, not thwarted, by granting the requested injunctive relief. The General Assembly has officially extended the institution of marriage to same-sex couples and, by doing so, has demonstrated its belief that such a policy serves the public interest. On June 1, 2014, Clerk Orr will be required to issue marriage licenses to, and register the solemnized marriages of, same-sex couples. In light of this fact, the Court is hard-pressed to articulate a reason why the public interest would be disserved by allowing Gray and Ewert, given their compelling circumstances, to marry a few months earlier than permitted under the current timeline. At bottom, the harm

13

Plaintiffs will suffer should relief not be granted far outweighs what little harm, if any, the State will suffer as a result of granting temporary relief.

Balancing the equities and hardships strongly militates in favoring of granting temporary injunctive relief. At this balancing stage, though, the Court must still weigh in its analysis the strength of Plaintiffs' likelihood of success on the merits against the balancing of harms.[4] Given that the balancing of harms strongly weighs in favor of granting Plaintiffs the temporary injunctive relief they request, only a lesser showing of likelihood of success on the merits is required here. *See Abbott*, 971 F.3d at 12. Plaintiffs have demonstrated that their likelihood of success in challenging the constitutionality of the current Illinois law prohibiting same-sex marriage as applied to them is at least plausible. And, given the irremediable harm to Plaintiffs that would result from delaying injunctive relief, as well as the comparatively minor harm that granting injunctive relief would cause Clerk Orr and the State of Illinois, plausibility is all that is required at this stage. *See Hoosier Energy*, 582 F.3d at 725.

---

[4] At the threshold stage, Plaintiffs must demonstrate that there is some likelihood of success on the merits. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 n. 1 (7th Cir. 1994). It is at the later balancing stage that the court determines how great that likelihood is. *Id.*

## Conclusion

It must be noted that the relief granted here is limited and extends no further than Vernita Gray and Patricia Ewert. The parties are in agreement on this point.[5] To be sure, Plaintiffs seek a broader ruling from this Court that the current Illinois law is facially unconstitutional because it violates the Due Process and Equal Protection Clauses. That request may be moot in light of this Order. But the request for temporary injunctive relief applies solely to Gray and Ewert. The Court has found after weighing all the factors applicable to determining whether injunctive relief should issue, that given the compelling circumstances surrounding Gray's medical condition and her potentially imminent death, the injury she and Ewert would suffer by denying injunctive relief would be irreparably great. When balancing the equities as the Court is required to do, the Court concludes that the requested injunctive relief is the only equitable result.

ENTERED:

_Thomas M Durkin_
Thomas M. Durkin
United States District Judge

Dated: December 5, 2013

---

[5] Indeed, Clerk Orr has represented that despite the ruling granting injunctive relief in this case, absent a ruling that the current Illinois law is facially unconstitutional, he will continue to deny same-sex couples marriage licenses until Senate Bill 10 becomes effective on June 1, 2014.